all right we'll now call case number 17-20014 Bailey v. Bailey and once you're ready we'll let's get it let everybody get ready and then we'll hear from mr. Wilson all right thank you your honor please the court I believe this appeal can be simple question that question is when a party is claiming fraud because a fact was concealed from them can they claim fraud when the fact concealed from them is something about themselves we believe the answer to this question is no the question relates to the second and third issues that we briefed which concern one of the elements of fraud when there is a concealment and that is that the fact must be one that the party claiming fraud would not have had an equal opportunity to discover in this case the fact that electrical is claiming was concealed from it is that electrical owed substantial amounts of unpaid payroll taxes in 2007 and 2008 this is a fact that was gleaned from electricals own financial records if we want to look at an individual as having knowledge of this factor am I correct in thinking that there is a difference between paying the payroll taxes and filing the payroll tax returns there is a difference your honor similar to I could be having withholding every month from my salary and paying in essence in full what I would owe but then not Mr. X could be paying their monthly deduct you know withholding have paid in full the taxes they owed but never filed a tax return and those would be two separate wrongs if you will those would be two separate and is that similar in the payroll tax world it is similar in the payroll tax world interestingly in the facts and conclusions of the trial court it pointed out that distinction with regard to the fact that Shirley Bailey was receiving tax notices about not filing the 940 and 941 returns but that is different from having knowledge of the tax liability it looked to me like there was an exhibit that showed that Mr. Bailey knew about the failure to file the tax returns but is which was exhibit 23 that says according to the IRS none of the quarterly payroll tax returns have been filed but is there any evidence that Mr. Bailey knew the taxes themselves had not been paid that the money itself had not been sent to the IRS and just to be clear for the record I'm operating under the assumption that Mr. Bailey is my client Jeffrey Bailey yes your honor there are and in that regard that goes to one of the other issues we've raised and we believe there is no evidence of that fact the exhibit 23 if that is the email or the memo or correspondence from Harris author to Jeff Bailey Harris author's testimony and this is the best July 29 email to Mr. Jeff yes and that email to Jeff during his testimony Harris author's about the payroll tax liability and then I asked him on cross-examination where is it in this July 29 correspondence I'm looking and I don't see it he says I rest none of the returns have been filed since I need all of the 2007 tax deposits received by the IRS I'm sending a power of attorney so even this email is making that distinction between the returns and the money's the key thing here not the returns in this whole alleged fraud right yes yes it's the money that's owed that's the problem filling out a bunch of forms wouldn't have been the problem the problem would be if that money was never paid and now there's no money and now what do we do yes your honor it's it's the payments as opposed to the non-filing of the returns that is the issue and that's just it in looking at that that email that correspondence Harris author acknowledged I didn't say anything about the tax liability I was just talking about the returns so going to Jeff Bailey's knowledge there there was no proof of that Harris author testified that he never told him testified that he didn't know if Jeff Bailey knew about the unpaid payroll taxes Jeff Bailey's testimony was in regards to his being in control of electrical if you're talking about the fabrication and the work going on in the yard he was in control but he never handled the finances that was mr. Bailey Shirley Bailey's testimony was she didn't train Jeff on the finances she trained Michelle Rougeau on handling these that this case could be answered in one question I thought you were going to get to the issue of the jury trial because obviously if you if you should have had a jury trial then we would vacate this regardless and so I wanted to ask about this issue whether it's equitable or legal even if contract rescission would be viewed as equitable which I think it is the actual judgment that was entered in this case is you mr. Jeff got to pay this money which sure sounds legal to me if I got to pay some money that didn't sound all that equitable or inequitable either way so I guess what I'm wondering is if the ultimate judgment is you pay money is that legal or equitable and that that is I would say the weakest part of our jury argument case and I would agree with your honor when I look at it I would say if the court had gone based on the pleadings because mind you our complaint was let's focus on the asset purchase agreement what is the responsibility for the payroll taxes under that initially he was just he was just seeking a declaration that the contract doesn't make make services responsible for these payroll taxes the trial court decided that against us on summary judgment we've already been up here once another panel sent it back to consider the fraudulent inducement defense but it was only pled as a defense it wasn't pled as an affirmative claim seeking damages so that would be equitable where I think it crosses the line the court found fraudulent inducement so wouldn't the remedy be rescission of the contract your client gives back all the assets why isn't that what happened then as a result of this finding no affirmative counterclaim was pled the only defense pled was we're looking to avoid the response of our responsibility for the payroll taxes under section 2.4 of the asset purchase agreement regarding the retained liabilities instead order Jeff to pay mr. Jeff to pay this money right and that that goes to one of the other issues we raised about the court going beyond the scope of the pleadings when the judge did that if he had constrained himself to the pleadings I'm just dealing with an equitable argument with the jury trial I'm dead on arrival but when he crosses that line where he begins the first paragraph of the facts and conclusions giving specific dollar amounts of these payroll tax liabilities and then says services and Jeff Bailey must pay this that's where you cross the line in my opinion from equitable to legal when you've got but even though he doesn't declaration that you didn't Jeff didn't have to pay it his parents had to pay it and so if he found that wasn't the case I mean it's one of the other everyone agrees with that right I mean either the parents had to pay it or Jeff had to pay it Jeff had to defeating your request for declaratory judgment would mean your clients on the hook for it well no because we were only focusing on the asset purchase agreement your honor there may have been some other element some other law statutory or or legal which could have placed some responsibility on Jeff and if what the if somebody was seeking to rescind the contract it was in fact rescinded that's equitable but if you're saying this lady has to get paid do you pay him or I pay him that's legal to me I'm paying money to this lady and it's either you or me and I don't care who's suing whom on that that's legal to me the only question that's equitable to me is rescinding the contract but that didn't happen here it wasn't rescinded I agree with your honor and I wish I thought to use that metaphor three minutes ago and save us all that time but I guess your argument would be although you haven't quite made it this way if there is no evidence to support the claim there's nothing to bring before a jury and therefore even regardless of whether a jury or judge there's no evidence you should win outright that that that is correct your honor when this case was remanded back in 2014 it was remanded to consider the fraudulent inducement defense that had been briefed at the summary judgment stage the case then set at the district court for two years and we were set for jury trial with 30 days notice I believe when you focus on that particular element of fraud by concealment the element being an equal opportunity to discover the fact that if he doesn't know something he can't conceal it right which goes to one of the other issues so I can't conceal that or I I agree with your honor and raise that as well the case comes to us after a bench trial and so the judge heard evidence and he handed this business over to Jeff and they were pretty much out of it that's the way the judge used looked at it from the evidence and so then the question was whether Jeff had told the parents about the million dollar debt before the closing because the closing made the buyer assume any any debt that was owed at the time of closing and I'm looking at testimony from author and he's asked was there a time that you went to Roy Johnson and Jeff Bailey to talk to them about the 941 deposit issue answer I had verbally talked to them a couple of times and I think there was probably an email where I listed the total amount so I mean that's some evidence that Jeff was told about it and there's other evidence that and I mean I can see whether where the trial judge could have considered that the parents were thinking of the return in the same light as the payment in other words a return would reflect the amount that's old and and and she well apparently she got as I understand it she got notice of the mother got notice of the return not having been filed and she testified that she called us on and he said I'll take care of it now I mean it seems to me the judge could have inferred from that that that Jeff says well he'll he'll pay it he'll file the return and pay the taxes now why isn't that some evidence that that Jeff knew about it and the mother did well going to that particular testimony from Harris Arthur your honor that touches upon this July 29th communication you were reading that text where he says I believe there was a an email where I gave them an amount and that was the whole point he was saying I think I believe what he said I talked to him a couple of times I believe I talked to him a couple of times isn't it that what he said I had verbally talked to them a so I asked him about this and he pointed out with that email that he never mentioned that that tax liability the amount to Jeff in in that communication that furthermore the question was compound as to Roy and Jeff Bailey I he was also asked did it was Jeff Bailey aware of the payroll tax liability his testimony was I don't know it wasn't what that was a compound question as to Roy and Jeff what was their incentive read you I think I mean reads the one doing the daily book she knows more than anyone but what reason would it's not like she was stealing the payroll tax money that would be a reason for her to keep it quiet what reason would she keep it from Jeff who's overseeing the day-to-day at this point why would he what would be the reason to never had any experience or training on the electrical issues but going as to reason or motive as I see it there wouldn't have been would not have been one I mean why is it really just have paid the payroll tax as they've been doing before Jeff came into control before 2007 well the testimony was that Michelle Reed or Rougeau would be in contact with Shirley weekly sometimes daily and would tell Shirley this is the amount that we owe for payroll taxes Shirley Bailey who was the person in control of the Bank of England account up in England Arkansas or Scott Arkansas the account from which the money was taken Shirley Bailey was then responsible for assuring the appropriate amounts were in that account to make sure that the payroll taxes in our reply we showed where ultimately the control of the money or the benefits of the unpaid taxes would have flowed to electrical and Shirley and Roger Bailey and she keeps the money and now she's suing mr. Jeff for it in that you're arguing but what my argument actually is motive it's irrespective of motive the fact is as you pointed out there's no in our there's no evidence of Jeff knew and further that even if Jeff knew a separate issue would be whether or not they had an equal opportunity to discover this and that's just it she would have looked at the account she was Shirley Bailey was asked about it what's your response to the September emails I know that's a month after the asset sale but where they talked about we should have revealed this in April or May but you know there were reasons why we did it Roy Johnson's testimony was the reason why they didn't that that was just arbitrary months he used before the sale the reason why they didn't was they did they did not know in April or May but my first argument on that that I made to the court and pointed out to it was that's an email between Roy Johnson and Michelle Rougeau Jeff Bailey was not a party to that email he's not even copied with the discussions going back and forth between Roy and Michelle you know Johnson is all I guess he's kind of the comptroller of the company right is that more or less his capacity he came in and was given the title of CFO all right but his purpose was just to clean up the books as a former officer working with bank loans to make sure that there would be a bank that would loan the money Jeff needed to buy the company he did he did more than that didn't he I mean I mean they're all kind of emails in here to Johnson indicating that he knew about the debt he did more than that the emails to him were after August of 2008 I will concede that Harris author testifies he told Roy before the asset sale Roy Johnson's testimony was no I was not aware of this until after the sale well our focus was on getting the cash flows yeah but I mean not Jeff correct and that's that's right that's Roy not Jeff and to the extent Roy's representing anybody it would have been services who wouldn't have even owed a duty to disclose to electrical I see the road I mean you know if there's a conflict in the testimony judge Hughes entitled to make that call in it if if judge Hughes was entitled to try the cases a bench trial and not a jury trial yes your honor all right let's hear from I'm sorry you thank you your honors may it please the court my name is Steve Curry and I represent there are a lot of Bailey's in this case I represent Shirley and Roger Bailey Bailey consulting and rig up electric services there's several issues that have been briefed by the parties in this case I want to address several that first of all as to Jeff Bailey's knowledge of whether the returns had been filed or the taxes had been paid the testimony from the witnesses from Shirley Bailey was that she would deal with Michelle Rouge oh she was told on a regular basis the returns are being filed the taxes are being paid miss Bailey's function was to call from the line of credit and to send that money to Wood Forest Bank which was the company's operating account then the testimony is is that the taxes would be paid out of the Wood Forest account I mean I'm sorry the can you point to us in the record because this email of exhibit 23 which y'all focus on does not say the taxes were not paid says the returns were not filed so can you point to evidence that Jeff was told before the sale closed that the taxes were not paid yes I can give me that record site because not all this goo about Jeff or Roy and I don't know when it was not but a clear answer that judge Hughes could have relied on assuming he's the corrector first testimony was the testimony from Harris author who had been brought in to look over the finances Harris author stated that he had discussed with Jeff Bailey and with Roy Johnson on several occasions early on I've been reading has been very gooey it has not been clear and this email to me undercuts the argument that Jeff knew about the taxes rather than about the tax returns I don't have this specific site by Mr. authors testimony what Harris author discovered I believe it's at 1274 there is also exhibit 20 which is at 2793 of the record and Harris authors testimony about him having talked to them was at record 1281 84 and 95 now you have to understand that Harris author is putting the financing package together for Jeff Bailey to buy the assets the asset sale agreement itself says that Mr. Bailey has been in full and complete control of the operation management of the company prior to the sale so it's not as if he knew nothing about the taxes knew nothing about the finances he hired all the CPAs that work for the company he hired you know Harris author he hired Mr. Weinstein he hired everybody that had any part in that as we go towards the closing the Wells Fargo Bank is providing the funding for this generated by Mr. Bailey and by Harris author that were given to Wells Fargo reflected that those taxes had been paid which was in error which was not true and which everybody agrees was a material misrepresentation that those Wells Fargo was not notified that believe that is at record 2120 2121 and what Mr. Johnson says that is that is that signed by Jeff or what is that presented to Wells Fargo application on behalf of the Wells Fargo was to provide the financing for the transaction Mr. Bailey as the buyer would have made the very same representations to Wells Fargo that he made to Shirley Bailey that taxes had been paid Roy Johnson says on the books it appears that the taxes have been paid when they had not Mr. Jeff is relying on those same books and he would think the taxes has been paid I mean we still have to have evidence that he knew they weren't and yet represented that's the key he could be thinking that you know if if Judge Costa tells me paid his taxes I would believe that everybody paid his taxes and that would not necessarily mean he had I'm sure he has but you see what I'm saying so that the problem is that we need something that pinpoints that Mr. Jeff before the sale knew the taxes weren't paid and yet he goes around saying they were and to me at least what I've looked at all look at your sites again what I've looked at has been a equivocal or focused on this email that to me this email doesn't isn't the no your honor it's not the email is the oral testimony that before that that's where you come up with the April and May dates that are referenced in the post closing email Harris author confirms that in April or May he knew the taxes had not been paid he talked to Jeff Bailey and to Roy Johnson about that now you then see the email post-closing that says oh we shouldn't be telling her in September we should have been telling her back in April or May which is cooperation of the conversation that Harris author had all right tell me about the jury trial issue because it seems to me that whatever anybody thought they were doing the actual result of this was a legal ruling that you gotta pay these taxes so how can you say that's equitable I mean if they had rescinded the contract everybody gives back what they had and undoes the deal I I agree that's it that's equitable but saying you owe her the money instead of me that to me is legal but there's not a judgment being sought there was no claim for damages in the case that was before judge Hughes and how can you can sustain this judgment I mean the judgment that's entered is Mr. Jeff's got to pay XYZ dollars and penalties and fines and all I mean it's a money judgment yes it's declaratory judgment that he is responsible for the payment right and declaratory judgments are driven by the underlying that declaratory judgments by themselves are neither legal nor equitable they're statutory and so it's driven by the underlying like what are you getting if it had been a declaration that somebody's entitled to an injunction that would be equitable a declaration that the contract has to be undone that's equitable but a declaration that you got to pay money instead of her that's legal well your honor would be like a declaratory judgment on the car wreck who is responsible for the car wreck but we're not going to sue for damages we're just seeking a declaration of liability you say that well but you still you still though don't you're not because if I think you caused the car wreck then you wouldn't have to pay for me but if they say no Katharina you caused the car wreck then I got to pay for me that's money but no your honor if you ask for damages I would agree but if you're only asking for a declaratory judgment on responsibility and you're not seeking damages there's a there's a distinction under this judgment who has to pay the IRS under judge Hughes's judgment we just wrote a one-sentence opinion affirmed now what happens well the IRS was not a party I would agree with the opposing counsel on that they don't have a judgment then to go and collect against Jeff Bailey they can use this judgment against Jeff I don't think they can your honor they weren't a party to the case yes you never heard of offensive collateral estoppel he's a party no I'm saying he's been found liable your question you don't think the IRS can take this judgment and go hey mr. Jeff we got this judgment you were a you don't think they can do that I've given up a long time ago in determining what the IRS can or cannot do any party any party could take this judgment and use it against mr. Jeff because it says he has to pay and he's a party to it so why isn't he get a jury trial on that well it's our position in this case that when judge Hughes on remand noticed up everybody involved that we're setting it for a bench trial that there were it was not like we just all showed up one day and oh my god where's the jury it's before you get into the timing issue I want to follow up on what judge Haynes asked the other side Jeff is seeking a declaration that your clients owed the taxes you throw up a defensive fraudulent inducement you prevail on that shouldn't the result be rescission of the contract if it had been played yes okay you don't want you don't want to rescind the contract which would mean your clients owe the taxes because if the whole deal is done on undone it's your your clients obligation you get the assets back to but yes you're correct but no one wants to do that no one wants to undo this is that what's going I mean thank you that'd be the normal result now but can't you also get ref can you also get reformation of a contract based on fraudulent inducement yes your honor I think you could so could you so and it doesn't always spell this out but could the court have said okay I find fraudulent inducement therefore I'm going to reform the contract so that the tax liabilities the undisclosed tax liabilities as the court founded assuming there was a basis for that those passed on to Jeff in the agreement the court and reformation would be equitable yes but but none of this is I mean the judgment is so strange because the court doesn't go through any of those steps well the parties both stipulated at the trial that we were both seeking equitable relief and then on this appeal when we get into the clean hands argument appellate is even arguing that it's equitable in nature you know everybody was hanging with the court this case was filed six and a half years ago in the district court it's been up here once and back down right have you all availed yourself of the circuit mediation program we were because I mean it really see we have tried your honor we were kind of it's it's emotional not business but but there's been no it was referred to mediation and both parties did not agree to that did you use the circuit once it got up on but it's very difficult as the lawyers to deal with that I will tell you that right now but it does call for that because the problem is the family bond is more important than this money and it will decide this case on the law I'm not here to repair your family but if you do care about your clients you will try because one day it will be too late for the repair and they will be sorry whoever's left behind will be sorry I think it was apparent at the trial it's that day has passed but may I go back to the question on the jury trial it's our position that even if there were a right to a jury trial that that right has been weighed and there's been an acquiescence in the case proceeding on the bench trial the only objection that was ever tendered to the bench trial was at 642 electronically file the night before a notice did mr. Jeff Bailey have of the trial setting your honor the notice went out I believe it was approximately 40 days before the trial wasn't a whole lot of time in there to deal with me first of all they're trying to figure out what the trial was going to be there was still summary judgment pending there was a lot going on and we have case law that suggests that finding a waiver of a jury trial is something we do very we don't do lightly let's put it that way but the court has also said that it can be done through acquiescence or waiver yeah and I could see how if you tried the whole case and then judge Hughes entered his opinion you didn't like it and then you asked for the jury trial I could see how that's a waiver but here they did before they knew how judge Hughes was going to rule on the case and before they presented any evidence they did say hey we demanded a jury trial like we're supposed to and let's assume arguendo that they're entitled to one that it's a legal issue at least as it transpired and then they asserted that again before the trial began why isn't that good enough because why should we at least err on the side of a jury trial which is a very fundamental right that because we also approach the court midstream on this with the questions that we had upon receipt of the notice of the bench trial and in that counsel and mr. Wilson and I both work together to come up with the questions to be presented to judge Hughes and never was there a question about oh yeah by the way we're entitled to a jury trial it was in a very short time frame I mean this isn't like three years before you do this pretrial order and everybody agrees to a bench trial and then they show pop-up the morning of hey I'm not saying they didn't get adequate notice of the trial but you know I will tell you back when I started on the state court and I started noticing up trials that cases have been sitting there for five years on 45 days notice which is the Texas rule which are entitled to believe me we had a lot of lawyers running in and all upset about that because they weren't ready so it's a short time frame in my experience both as a lawyer and as a judge seeing the lawyers so I don't you know it is as a case for a waiver they they didn't wait until oh yes now we're in the middle of trial we don't like the way judge Hughes is handling the case so let's object they did object before it began albeit not as quickly as you would have liked or we you know would have been helpful if I hadn't picked it up on my phone in Dallas on the way down to Houston I wouldn't have known there had been an objection judge Hughes did not know there had been an objection until the morning he showed up to preside on the bench trial so you know it I do think the facts in this case the rule you want us to announce is what on a judge decides to set a bench trial and despite the demand for a jury trial what is a reasonable time that a lawyer should have to object to that having already demanded the jury trial and let's assume argument or they're entitled to it what what is the rule you're asking to announce as immediate as possible to alert the court that no we continue to see why wasn't the court already alerted by the original demand for jury trial why does the court get to try to play a gotcha with the lawyers by setting it for a bench trial when it jury trials been demanded I think the court was dealing with the summary judgment issues that were before it and the court was looking at this under rule 56 as a method to gain additional facts that it deemed necessary to consider the summary judgment issues that's the way I perceived I think that's the way the parties perceived it and even in the court's clarification order that was entered in this case he made reference to this will give the parties the opportunity to present additional evidence in support of the motions for summary judgment that was the understanding I think the court had as evidenced by the orders as well as the party's head and proceeding to trial it was only like I say at 642 the night before that the objection to a bench trial was was submitted and I think again on the concealment issue if you look at the record oh I've been looking at it understand we have to I will not promise you I've read every page but I've looked at a lot of it but you gotta look at that I have duped that email into my notes and if you look at after the fact what was done judge Hughes asked when did you go and advise Wells Fargo the lender who had funneled a million dollars into this transaction when did you tell them the and if you look at if you were to say did Jeff not know about the taxes being paid he never advised his mother that the taxes hadn't been paid I think there's this overlay of family in this case it's hard to get away from again we will decide the case on the law on the facts and I don't want you to think I'm going to get immersed in the family issue well and Harris author kept directed him back to his mother and Harris author on September the 30th was the one that disclosed that the taxes had not been paid for the first time he said that's the first time Shirley Bailey knew and these are trust fund withholding taxes right yes sir they're not just regular income these are not to pay these can send you to jail they can and you have to file the returns and you have to follow this but they seem Shirley Bailey are there any more questions of the court thank you thank you appreciate your time I'll go back to it simply outside that I can cite it's on the record at 1287 1288 Paris author was asked about Jeff Bailey's knowledge of payroll tax liability before the asset purchase agreement occurred on August 10 2008 his testimony was I don't know your honor pointed out some of the testimony by him was squeamish that one he doesn't know who we are I'm sorry I'm sorry wrong legal term or practical term to a legal time but one ended after Johnson knew that had been paid what was that your honor is there any doubt that Johnson didn't know again going back to where I put it differently is there evidence in the record that Johnson knew about yes your honor there is but Johnson wasn't a litigation services he was just a CFO for the company and working directly for Jeff for CFO for electrical he then began working for services the company that was started after these assets purchased because again this this was not a sale where the stock of electrical was purchased it was an asset sale and so those September emails whatever else they show do clearly show that Johnson and read or keeping it from Shirley because they say we haven't told her about it we've known about it since April or May so you know a fact finder can make inferences based on the circumstances again what Jeff hires Johnson he's oversees him what reason would these underlings have to not pay the taxes and to keep that from Shirley if it wasn't to benefit the transaction and especially getting the loan from Wells Fargo and as I see it none your honor where I started this we know they didn't tell Shirley so why doesn't that support an inference that Jeff did know and was directing them to do that I there's no personal benefit to them from not paying but but at the same time it was Michelle that was on the phone with Shirley daily Jeff wasn't dealing with the finances Michelle said if she had a question about the finances she went to Shirley she only went to Jeff she had a question email but about is clear that they were keeping this from Shirley isn't it no your honor the September email in my opinion is clear that they didn't know about this before the asset sale that that's why they weren't saying anything that differently that it says we've known about it since April or May it says the reason we're it says the reason we didn't tell them in April or May and there's a good reason for that but going to your motive it comes down to an issue of okay who enjoyed the benefits of this Shirley Bailey owned 51% of electrical her husband Roger own the other 49% if that money was kept in the Bank of England account and never paid to the IRS Shirley Bailey and Roger Bailey would have enjoyed those proceeds well wasn't this part of the litigation the other litigation but between the parties here it was your honor but it also comes into issue here with respect to the unclean hands which we hadn't talked about much and that is the fact that the day before the sale you know yes this is a family but the day before the sale before this ever entered into the courts Roger Bailey and Shirley Bailey found out there was five hundred fifty two thousand dollars that hadn't been borrowed on the line of credit they went into the Bank of England borrowed that money pulled it out of electrical and the next day services assume the obligation for that debt thereby increasing the amount that services was paying for these assets by over a half million dollars and all this was settled in that over lawsuit I I don't believe it was when it comes to the unclean hands your honor because again that would have been a harm to services and